May it please the court, good morning. My name is Kat Caballo and I represent the plaintiff appellant Charles Blackwell. At this time I'd like to reserve three minutes for rebuttal. I will be responsible for watching my own time. Mr. Blackwell suffered a serious injury due to several disabled access violations that caused a dangerous condition for visually disabled people walking along the subject's sidewalk. And he was denied a trial on the merits because the district court failed to consider key evidence that creates triable issues of fact. Mr. Blackwell had two sets of claims, state law claims against all the defendants, and in this case under the ADA federal law, Title II, against the city and county of San Francisco. I'll address the state law claims first. In this case the district court erred in three ways. The first is that it did not consider the 1961 American Standards Association specifications, or what I'll refer to as the ASA standards. Counsel, let me just interrupt here. As I see it, the crux of Mr. Blackwell's state law claims is that the sidewalk violates the 1961 ASA standards at the time the middle cover was installed. But Mr. Blackwell's briefs and expert reports state that the sidewalk violates multiple ASA standards, but I can see where any were identified specifically. There are no specific ASA standards that were elucidated in the report, Your Honor, that is correct. In our briefing, though, we do elucidate on that further. And the specific standards that are violated, there are three specific ones. 4.2.2, which states that such walk shall be of a continuing common surface, not interrupted by steps or abrupt changes in level. Now, the conditions that we've outlined in our briefs, specifically the holes that are at the corners of the metal plates that are almost two inches in depth and width, in some cases. Not point in width, but at a height, it's .73 inches. That I believe you're referring to, Your Honor, as the difference between the plates, the vertical difference between the plates. That's a different condition, and also in violation of that ASA standard. All right. There's also ASA standard 4.2.3 that states that wherever walks cross other walks, driveways, or parking lots, they should blend to a common level. So the conditions that we've outlined with regard to the metal plates not or exceeding the slope of the ambient slope of the street, and also the cross slope, which, Your Honor, quite honestly is one of the most egregious violations in this case. I believe it's almost 5.2% in part of the metal plate. That is also in violation of that standard. And then the final one is with regard to slip resistance. That's footnote 6 to ASA standard 4.2.1, which specifically states walks or driveways should have a non-slip surface. We've also outlined in the briefing that the slip resistance of these plates violates the city's own standards for slip resistance as measured by the coefficient of friction that we've described more in our briefing. Thank you. And you're right. There are several violations under the ASA standards. And quite honestly, the error here on the district court's part is it didn't address it at all in its orders. And so there's no way for us to know whether or not it considered those standards. The second error that the court made with regard to the state law claims was in finding that Mr. Blackwell had no standing against the landowner defendants Christopher Foley and 1268 Grant. The district court's argument here in position is that Mr. Blackwell needed to show that he was in the attempt of accessing a public accommodation in order to have standing under California Civil Code section 54.3. Our briefing outlines that the court ignored the application of California Civil Code section 54 subsection A, which specifically outlines the application to sidewalks, highways, and streets and walkways. And also the application of California Civil Code section 55, which provides for injunctive relief for violations under section 54 subsection A. Well, injunctive relief in section 55.5, aren't you dealing with tort actions there? Section 55, California Civil Code section 55 is an enforcement mechanism for violations under the Disabled Persons Act, and in this case specifically section 54A. So if there is a violation found under section 54A, an aggrieved plaintiff is able to seek enforcement via injunction by section 55. Is that part of the statute? It is. Thank you. And the third and final error that the district court made with regard to Mr. Blackwell's state law claims is in its failure to consider the city's public works code, article 15, section 706. And here, that public works code requires the landowners, adjoining landowners to sidewalks to maintain the sidewalks, including maintenance under section 54A, which we've just discussed, allowing disabled people full use of the sidewalks. And this public works code, your honors, creates an affirmative duty on the landowners to remove barriers and to make sidewalks safe. These are triable issues of fact that were not addressed or were resolved inappropriately by the district court. Unless there are any further questions about state law, I'm going to move on to the federal law claims. That set of claims involves Title II of the ADA, and these claims are against the city and county of San Francisco only. Here, the district court erred by holding that an inherently dangerous condition in the subject sidewalk that violates several accessibility standards that we've just discussed and precludes visually disabled people from accessing an entire city block did not violate Title II of the ADA. We all agree that the standard here is for existing facilities, and that says under Title II that the city is obligated to operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. That's the question I want to ask you about. Yes, Your Honor. As I read the ADA, it states that public entities don't have to make each of their existing facilities accessible to individuals with disability. How is that consistent with your claim that a single accessibility problem renders the whole system inaccessible? Yes, Your Honor. The analysis here is that the cases that the district court relied on, and unfortunately the only cases that we have that are published, all involve buildings and state services. The analysis we urge this court to consider is to look at and evaluate, what is the goal and the function of the service, program, or activity that's in question? And is the disabled person able to enjoy the benefits of that program, service, or activity? So here, to answer your question, Your Honor, sidewalk system is a very different program, service, or activity than access to a building or being able to access a DMV to get your license. So we'll take the Hanabric case as an example, because I believe it's one of the cases that you're referring to. In that case, the plaintiff challenged that several DMV locations near his residence were not accessible. And the court held there that, yeah, you know, some of those DMVs are not accessible, but there are ones that are accessible near your residence, and we've moved others that were not accessible to now-accessible locations. Let me just interrupt, if I may. Of course. Does this mean that San Francisco has to remedy every problem anywhere on any sidewalk if there are other ways to avoid that sidewalk? Our position, Your Honor, is yes. Okay. Well, that's very clear. The guidelines that are outlined in either the ASA or ADAG, any of the regulatory guidelines for access, are minimum standards for access. There is a lot of testimony and research that goes into how those numbers, a quarter of an inch, no more than 34 inches above the finished floor, these numbers are not a range. If there's a range provided, that's a range, but they're minimum standards. So if there is a violation, our position is that the city and county of San Francisco is obligated to fix those to create access. How do you respond to the city's argument that this standard would be impossible to meet, and in particular their example of the sloping hills of San Francisco that would almost certainly violate the slope requirements? Sure. If you look specifically at this, when we call out the slope, the slope requirements that we outline are not that you can't have a slope in the city of San Francisco more than 5 percent. That's just not going to happen. We're a hilly city. It's that the sidewalk, or in this case the metal plate, cannot exceed the ambient slope of the street. So in a generally hilly area, you take an average of the street, and then your improvement, for lack of a better word, cannot exceed the slope to make that a more dangerous condition. Does that answer your Honor's question? No. Okay. Because you make it sound very easy. Of course. I'm just trying to figure out. So for every slope, you find it acceptable that they don't have to meet? Or are you saying no, they still have to meet? They have to meet that standard. That standard is whatever the general average slope of the street is that's presented by the natural topography of the area. You cannot exceed that slope with your improvement. You cannot make that area more dangerous. We're not saying that everything has to be 8.33%. That's for improvements for ramps. Those standards apply to improvements. But for the natural topography, that's an argument that I think is misrepresented by the appellees in this case. It's not the case. Let me ask you about the metal plate. Yes. I think the district court said the metal plate was installed in the 1970s at the earliest? That is correct. I didn't see anything in the record. It seemed void of when the plate was installed. The only evidence in the record, Your Honors, is at ER 223 to 224. I believe this information might be elsewhere in the record, but that's Mr. Orsi's declaration. He was part of the family who owned the building prior to Mr. Foley and 1268 Grant. His testimony in the declaration, as far as I recall, says that his family acquired the property in the late 1970s, that he doesn't recall that the plate was there at the time that his family acquired the property, and that he doesn't recall that it looked like it had been recently installed or that there had been any alterations after that. So basically that it existed in the 1970s hasn't been changed since. I guess the question is how is that sufficient to establish the date of construction? It isn't. I think that what we're left with is what the district court found, which is that we can say that the metal plates were installed in the late 1970s at the earliest. And with that limited information and finding from the court, we know that the ASA standards apply, at least as it pertains to state law claims. Do you want to reserve the rest of your time? I do, actually. Thank you. Could you just tell us when you think the elevator was installed? Yeah. I have the declaration of Norris Orsi right before me. It's what she said it was. His declaration was when we acquired it, it was there, and we acquired it in the late 1970s. She further says, I have no reason to believe that it had been recently installed prior to purchase. So I think the district court got one word wrong and should have said it was installed at the latest, in the late 1970s, rather than the earliest. That's what the record supports, and I think that we need to go by the record because that's the evidence before the court. Put your microphone up. Thank you. Michael Chang for Appellees in this case. May it please the court, I'm first going to talk about plaintiff's state law claims against the restaurant defendants. Now, plaintiff's main thrust of the appeal is that the trial court, the district court, erred with regards to application of the California Disabled Persons Act. And if you look at plaintiff's briefing, over and over they cite to civil code section 54A, and indeed the language is very broad in section 54A. It says individuals with disabilities or medical conditions have the same right as the general public to free and full use of streets, highways, sidewalks, walkways, public buildings, and the list go on. But what is true is that under California law, it is not actionable under the DPA to prove a violation of section 54A. Plaintiff seems to contend that the fact that a disabled plaintiff, Mr. Blackwell, slipped and fell on a sidewalk, that that creates a violation of the DPA based only on section 54A. However, that's simply not the law, and a review of the history of the DPA makes that very clear. We present a good history in the case Coronado v. Cobblestone Village. In that case, they talk about initially the California legislature passed section 54 and the broad mandate that I just wrote. But then thereafter, they passed government code section 4450, and what that did is, quote, give meaning, unquote, to sections 54, the broad mandate. And it did that because it directed that building standards be prepared. And that left the Coronado court to state that this fact strongly indicates sections 54 and 54.1 were not themselves intended to require business owners to modify the structure of their premises, as other statutes were adopted for that purpose. The Coronado court goes on to state the preexisting rule of law, and that is to create a cause of action under the California DPA, the plaintiff has to show a violation of an access standard. Plaintiff seems to say Coronado is not good law, but it is good law. It's true it was overruled in Munson v. Del Taco solely to the extent that it indicated that a plaintiff in an UNRU Act case, a disabled plaintiff, had to show intentional discrimination. The Munson case did not talk about the DPA at all, and with regards to the DPA, it's clear that Coronado is still good law. And so the law in California is clear. Plaintiff has to show a violation of an access standard in order to create a claim under the DPA. So where is the violation here? What access standards are we talking about? In Apelli's briefing here and also down below, we spent a lot of time reviewing the standards, the ADAG standards, Title 24 standards, and it is clear that those standards simply do not apply to a public right-of-way such as a public sidewalk. We look at the definition of sites, and the sites are talking about the public accommodations, and the sites have scoping requirements for pathways within the site, but invariably these scoping requirements end where the site leaves off, and that is at the beginning of a public right-of-way. It is clear based on these definitions of sites that the sites do not cover a public walkway, public right-of-way, which is undisputed at issue in this case. Now the ASA standards, plaintiff puts a lot of emphasis on that, but there is no reason for the court to think that these ASA standards apply to a public right-of-way. Title 24 does not, ADAG does not, and there is nothing before the court indicating it does. The only analysis in the record is from defense expert Kim Blackseth, who states that the standards were six pages and contained very limited scoping provisions. The ANSI standards did not include these covers. That is the only analysis in the record. And your honors are correct in that what is in the record is that plaintiff's experts, they have a number of measurements, sloping, the running slope, the cross slope, various depths, but they apply the ADAG standards, they apply Title 24 standards, and they apply the ASA standards even though they're inapplicable. And what they're doing is comparing apples and oranges here. You have a cross slope in the city and county of San Francisco that's way more than what is allowed under the ADAG standards because they deal with generally interior buildings. They're trying to apply these standards to the sidewalks. And opposing counsel indicated to you that it wouldn't be a problem if the running slope is greater than what's allowed under ADAG because the running slope would be, if it's consistent with the ambient slope of the street, that that's okay. ADAG does not say that. Nowhere in ADAG does it say that. Where it does say that is in the Access Board's proposed guidelines. In July of 2011, the Access Board, this is the Department of Justice, they put out proposed guidelines to specifically control public walkways, public streets. And if there's any ambiguity in these standards, I request that the court review the comments from the Access Board. I have some questions. I just want to make sure I get them in before your time goes. This is about the metal plates. Assuming the metal plate was installed in 1970, do you agree that the ASA standards would apply? And if they do apply, are they up to standard? They do not apply because they do not apply to public walkways. This is a public sidewalk. The subsequent Title 24 standard certainly does not apply to sidewalks, public sidewalks, and there's no reason to think that the ASA standards would Because the ASA standards were like a stopgap until Title 24 came into existence. That's the purpose behind these standards. They're very limited. And it's our position that they were limited to public accommodations. They do not apply to public right-of-ways. And if they did apply, would they be up to standards? To the extent that they have certain sloping requirements, it might not. What's unclear is precisely what standards are applied here. The first time that plaintiffs present any evidence of what standard is in effect is in the briefing on appeal. The record below has no indication of what standard, as you mentioned, what ASA standards were at issue. It simply says each of these measurements violate ADAG, Title 24, and ASA standards. You don't know what standards are at issue here. Even though the appellant wasn't attempting to enter the restaurant, I'm curious about California law. Does the California law expand standing to those potentially aggrieved in actions for injunctive relief? That is true. But still, under Civil Code Section 55, you have to show that you're potentially aggrieved. But to do that, you have to show a potential violation of the California Disabled Persons Act, which in turn requires a showing that an access standard was violated. So under the facts of this case, there's no potential that Mr. Blackwell could demonstrate that this sidewalk door cover violated any applicable standard because there are none that apply to a public sidewalk. Additionally, the door cover at issue here is not by the entrance to the restaurant establishment. It's around the corner and down the block a bit. Even if this was deemed an inaccessible barrier, there's nothing preventing anyone from accessing the restaurant. Mr. Blackwell himself indicated he could simply go around the sidewalk door cover. In his deposition testimony, he testified that he can go anywhere he wants to in the city and county of San Francisco. That he accessed that same block before the accident and, indeed, after the accident. And he actually went into the restaurant after the accident. That concerns a different case, but the record is clear. He can access the restaurant. And also on the indemnity claim, the potential that plaintiff would be able to state a cause of action for injunctive relief. What is clear here is that a non-slip barrier was placed on the metal door cover voluntarily by defendants well before the summary judgment briefing. That was on there. And currently, the new owners of the restaurant are not parties to the case. The current defendants here sold their interest before the summary judgment. And so I think the issue is moot for two reasons. You don't have the proper defendants, and already the cover is treated with a non-slippery surface. And, in fact, Mr. Blackwell himself at deposition indicated that if it was covered with a gritty surface, he would be comfortable. He used the word comfortable walking on that door panel. And it's also important to note that what happened here is that plaintiff was walking in the rain. It was dark. He was wearing non-slip. He was wearing not non-slip shoes. He was wearing shoes without any treads. He was going down a hill, and then he walked on a metal door cover, and he slipped, and he injured himself. Now, the question here for the court is, was he denied access to the sidewalk because of his disability? Or was he denied access because this was maybe a dangerous, slippery condition? Defendants assert that this case is a slip-and-fall case. He wasn't trying to access anywhere any type of public accommodations, which the accessibility standards talk about. There are no accessibility standards to public right-of-way, such as a sidewalk. What we're dealing with here is a slip-and-fall. And the nature of the danger posed by this applies to the disabled and non-disabled alike. But what's interesting about this case is that despite that this is a slip-and-fall, a common garden variety negligence claim is not at issue. Each and every cause of action put forth by plaintiff requires a showing that he was denied access because of his disability, based on some violation of an accessibility code. And as I already stated, there's simply no showing that any such applicable code was violated. I would like to talk about plaintiff's reference to Section 706 of the San Francisco Public Works Code. Now, what this section does is says, okay, if you're an adjoining landowner to a sidewalk, you have a responsibility to maintain the sidewalk. If you don't do that and someone is injured on there, they can bring a lawsuit against you. Now, if this was a garden variety negligence case, yeah, I think that would have some application. It would allow the injured plaintiff to bring an action against the adjoining landowner, even though they don't own the sidewalk, even though it's a city sidewalk. But there is no negligence claim alleged here. And plaintiff is trying to indicate that this somehow gives Mr. Blackwell standing under the California Disabled Persons Act to bring action. But still, the standing requirements are clear under California law. In order to obtain money under Section 54.3, which plaintiff is trying to do in this case, you have to show that you presented yourself to the restaurant, you tried to obtain its food just like anyone else, and were denied access. And I've already discussed under Section 55 under the injunctive relief. You still have to have a showing that there was a violation of an applicable code. And there simply are none in this case. What you have here is a slip and fall case with no claim for negligence. And no applicable standards that would make this into a disability access case. For those reasons, appellees request that the findings of the district court be affirmed in full. Thank you. Rebuttal. Rebuttal. Thank you, Your Honor. May it please report once more. In my brief rebuttal, I'd like to first address the issue, why is this not a garden variety negligence case? And the answer is very simple. If plaintiff Mr. Blackwell were to have just filed a slip and fall negligence case, all he'd get is money and walk away. But that's not the issue here. The issue here is that there is an inherently dangerous condition that is specific to visually disabled people. Unlike dangers in the sidewalk such as these, that we can see, troubleshoot, and walk around, a visually disabled person doesn't have that luxury. And they will be forced to confront it by either being injured on it when they confront the plate. And so in this case, Mr. Blackwell brought the suit in this manner so that we could fix the condition. Defendants are still liable. I'm going to address the argument that opposing counsel argues that we didn't name appropriate parties. And in this case, the defendants are still liable, the landowner defendants, because they owned the property at the time of the injury. And in the event that the court finds that any remediation needs to be done, the city will be going after these defendants, not the current landowners, for contribution for this remediation. I also want to point out something that hasn't been very highlighted. It's not just the slipperiness of the plates. It's all of these conditions combined. And I'll point out one, for example. Again, I mentioned it earlier. The cross slope. The cross slope is so significant, it's almost double, if not more than double, the maximum allowable 2% cross slope. And the plates are independent. So when you step on one, it goes down, then it creates this vertical change in elevation from the adjoining plate. So it's extremely unstable. So the causes for Mr. Blackwell's fall, though opposing counsel would like to argue that it's just because it was slippery, that's not the case at all. Counsel, excuse me. Yes. Since you're raising the issue, I have a problem with that. Because the ASA standard 4.2.2 says that walks, quote, shall be of a continually common surface, not interrupted by steps or abrupt changes in level. The metal covered seems to be roughly on the same level as the sidewalk. How does that violate ASA? It does when no one's stepping on it, Your Honor. But once you step on it, there's almost a vertical change of elevation of an inch. The maximum allowable. 7.3. Yeah, something close to that. But the holes themselves, too, those are also vertical changes of elevation that are covered by that ASA standard. This is abrupt changes in level. Does that sound abrupt to you? Once you, when you look at the sidewalk and you come up on it and there's a divot that you might catch your foot in, then, yes, I would argue that that is an abrupt change in level. All right. Thank you. And finally, if I could just end my time here, that on the state law claims, Appley's sole argument is that there isn't an access violation because the standards don't apply to sidewalks. This is in direct conflict with all of California's law. And even the provisions that the defendants cite to in their brief, I urge the court to look at again. All of them say access to businesses, facilities, and services. So all of the legislation, all of the case law contemplates that access to facilities and services is integral to providing access to disabled people. Thank you. Thank you very much. Thank you both for your arguments presented here today. The case is now submitted.
judges: Fletcher, Nelson, Murguia